IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 13, 2025 Session

## GORDON GROVES v. CITY OF KNOXVILLE ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-612-15        E. Jerome Melson, Judge**
_____

### No. E2024-01103-COA-R3-CV
_____

In this action, the trial court dismissed the plaintiffs' claims based on *res judicata* and failure to prosecute. The plaintiffs have appealed in companion appeals.[1] Upon review, we vacate the trial court's dismissal of the plaintiffs' claims and remand for further proceedings. We deny the plaintiffs' request for an award of attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Herbert S. Moncier, Knoxville, Tennessee, for the appellant, Gordon Groves.

Jonathan Skrmetti, Attorney General and Reporter, and David Wickenheiser, Assistant Attorney General, for the appellee, Tennessee Department of Safety and Homeland Security.

Ronald E. Mills, Deputy Law Director, for the appellee, the City of Knoxville, Tennessee.

### OPINION

#### I. Factual and Procedural History

On November 23, 2015, Caitlin J. Groves and Gordon Groves filed a complaint against the Tennessee Department of Safety and Homeland Security ("the Department") and the City of Knoxville ("the City") in the Knox County Circuit Court ("trial court").

_____
[1] *See Heredia v. City of Knoxville et al.*, No. E2024-01093-COA-R3-CV.

The Groveses asserted that their property—a 2006 Volkswagen Jetta—had been seized by the City on January 18, 2015. The Groveses alleged that the forfeiture proceedings instituted by the City regarding the seized property were unlawful and unconstitutional, as determined by an administrative law judge ("ALJ") on September 28, 2015, when the judge dismissed the forfeiture proceedings and ordered that the Groveses' property be returned to them. Although their seized property was returned on October 24, 2015, the Groveses claimed that they had incurred attorney's fees in the amount of $14,317.50 in order to have the property returned. The Groveses sought payment of those fees, a reasonable daily rental value for the vehicle during the seizure period, and prejudgment interest.

Also on November 23, 2015, Gilbert Heredia filed a similar complaint against the Department and the City in the trial court. Mr. Heredia asserted that on April 25, 2014, the City had seized his property consisting of $5,279 in United States currency. Mr. Heredia alleged that the forfeiture proceedings instituted by the City regarding his seized property were unlawful and unconstitutional, as had been determined by an ALJ on July 1, 2015, when the ALJ dismissed the forfeiture proceedings and ordered that Mr. Heredia's property be returned to him. Although Mr. Heredia's seized property was returned on July 23, 2015, Mr. Heredia claimed that he had incurred attorney's fees in the amount of $15,105.00 to have his property returned. Mr. Heredia sought payment of those fees, as well as interest on the currency that had been held by the defendants for 454 days before its return.

Mr. Heredia and the Groveses immediately sought to have their pending actions transferred to the same division of the trial court and consolidated. On December 28, 2015, the Department filed motions to dismiss or stay in both pending actions, asserting that (1) the claims were moot because they were "incidental to the primary relief" that Mr. Heredia and the Groveses had "already secured in a previous adjudication," (2) the claims were barred by the doctrines of *res judicata* or prior suit pending, and (3) both complaints failed to state a claim pursuant to Tennessee Rule of Civil Procedure 8. The City filed answers in both actions on January 22, 2016, denying any liability. The City also relied upon the affirmative defenses of *res judicata* and prior suit pending. On February 22, 2016, the trial court entered an order consolidating Mr. Heredia's and the Groveses' lawsuits and denying the Department's motion to dismiss or stay the proceedings.

Over three years later, on October 4, 2019, Mr. Heredia and the Groveses (collectively, "Plaintiffs")[2] filed a motion for partial summary judgment, contending that because prior proceedings had established that Tennessee Code Annotated § 40-33-207(a) had been violated during the forfeiture proceedings, Plaintiffs should be considered prevailing parties and awarded damages and attorney's fees pursuant to Tennessee Code Annotated § 40-33-215. Plaintiffs attached a statement of material facts, a declaration from

---

[2] Based on the trial court's consolidation of these two actions, the pleadings from this point forward refer to both Mr. Heredia and the Groveses as the plaintiffs. Accordingly, we will refer to them in the same manner in this Opinion.

their counsel, and copies of the orders from their respective underlying forfeiture proceedings before the Commissioner of the Tennessee Department of Safety. In those forfeiture orders, the ALJs had found that the Department had failed to demonstrate that "it strictly complied with the substantive and procedural requirements of the forfeiture statute" because Plaintiffs had respectively requested hearings but such hearings had not been timely docketed in accordance with the statute.

Also on October 4, 2019, the Department filed a second motion to dismiss. In this motion, the Department posited that Plaintiffs had failed to prosecute their claims filed in this matter, pursuant to Tennessee Rule of Civil Procedure 41.02, and had also failed to state a claim upon which relief could be granted, pursuant to Tennessee Rule of Civil Procedure 12.02(6). The Department asserted that more than three and one-half years had elapsed since Plaintiffs had taken any action regarding their claims such that the doctrine of laches weighed in favor of dismissal. The Department further asserted that *res judicata* and collateral estoppel now barred the claims inasmuch as judgments in other cases involving the same parties and the same subject matter had become final.

On October 7, 2019, Plaintiffs filed a response opposing dismissal, arguing that they had not failed to prosecute the action because the parties had "agreed to the case not being set while litigation was pending in Davidson County, the Court of Appeals and in the Supreme Court." Plaintiffs concomitantly filed a motion to amend their complaint and seeking to add a claim of bad faith based on the Department's purported "pay or delay" policy. Plaintiffs filed their amended complaint on October 7, 2019. On March 24, 2020, the trial court[3] entered an order denying the Department's motion to dismiss, finding that Plaintiffs had not failed to prosecute their claims because the parties "have been litigating the forfeiture proceedings and judicial review of those proceedings in other venues." The court also ruled that the Department did not possess sovereign immunity and that Plaintiffs' claims were not barred by *res judicata*. The court reasoned that an action filed pursuant to Tennessee Code Annotated § 40-33-215 is a separate cause of action from the original forfeiture proceedings and that a "claimant is not required to litigate issues contemplated by § 40-33-215 in the forfeiture proceeding," including a claim for attorney's fees filed pursuant to that statutory section.

Plaintiffs filed another motion for partial summary judgment on April 6, 2020. Plaintiffs urged the trial court to determine that the City and the Department had acted in bad faith and that damages should therefore be awarded to Plaintiffs pursuant to Tennessee Code Annotated § 40-33-215. The City filed a response, arguing that Plaintiffs' allegations of bad faith only concerned the Department's actions. The Department thereafter filed a motion for continuance pursuant to Tennessee Rule of Civil Procedure 56.07 and requested

---

[3] The original trial court judge presiding over these matters, Judge Kristi M. Davis, was appointed to the Tennessee Court of Appeals on May 28, 2020, and the current trial court judge, Judge E. Jerome Melson, was appointed to the trial court in 2021.

additional time to conduct discovery. The Department also filed a response contending that a grant of partial summary judgment in favor of Plaintiffs was unwarranted.[4]

On January 20, 2022, Plaintiffs filed a motion seeking permission to file a second amended complaint. Four days later, Plaintiffs filed a motion for leave to file an "Amended and Restated Complaint," based on the Department's purported request that Plaintiffs consolidate and restate their claims into one operative pleading. Plaintiffs later withdrew that motion and filed a new "Amended and Restated Complaint" on March 22, 2022. On September 1, 2022, the trial court entered an order allowing Plaintiffs to file the Amended and Restated Complaint.

The Department filed a third motion to dismiss on September 22, 2022. The Department again argued that Plaintiffs had failed to prosecute the action and that the claims were barred by *res judicata* and collateral estoppel. The Department additionally relied on the doctrine of laches. On April 24, 2023, the trial court entered an order granting the Department's motion to dismiss. In this order, the court explained:

> Prior to this Motion to Dismiss, Defendants have twice unsuccessfully moved for dismissal of the matter. In this Court's order dated February 22, 2016, the Court denied [the Department's] motion to dismiss. Thereafter, [the Department] filed a second motion to dismiss, wherein [the City] joined, and the Court entered an order on March 24, 2020 denying the Defendants' motion because Plaintiffs' claims pursuant to T.C.A. § 40-33-215 had "never been litigated." However, subsequent to that March 2020 order by this Court, Plaintiffs' claims under T.C.A. § 40-33-215 have been litigated with respect to the facts present. *See Gordon Groves v. Tenn. Dep't of Safety and Homeland Security*, Davidson County Chancery Court No. 16-619-II, August 17, 2020 Memorandum and Order (finding that "Mr. Groves has had his day in court . . . he has had many of them . . . and received a final judgment on the merits" (citing *Groves v. Tennessee Dep't of Safety & Homeland Sec.*, No. M2016-01448-COA-R3-CV, 2018 WL 6288170, at *4 (Tenn. Ct. App. Nov. 30, 2018)).
>
> * * *
>
> Here, Plaintiffs' Amended and Restated Complaint acknowledges that Tennessee courts have previously ruled on their claim for attorney's fees and that [the Department] was a defendant in the proceeding. Moreover, it is evident that the same cause of action was previously heard and adjudicated from the same facts and circumstances Plaintiffs currently rely on in this

---

[4] On March 18, 2021, Caitlin Groves filed a notice of voluntary dismissal of her claim such that the remaining Plaintiffs thereafter were Mr. Heredia and Mr. Groves.

Court, and that judgment was final. *See Heredia, et. al., v. Tenn. Dep't of Safety and Homeland Security*, Davidson County Chancery Court No. 15-1540-III, October 3, 2018 Order; *see also* Tenn. R. Civ. P. 41.02 (providing that a court's dismissal for lack of prosecution "operates as an adjudication upon the merits"). Accordingly, the circumstances are adequate for [the Department] to utilize a res judicata defense in their Motion to Dismiss pursuant to Tenn. R. Civ. P. 12.02(6).

In *Elvis* [*Presley Enters., Inc. v. City of Memphis*], the Tennessee Supreme Court held that a party raising the defense of res judicata has the burden of proving:

(1)     that the underlying judgment was rendered by a court of competent jurisdiction;

(2)     that the same parties (or their privies) were involved in both suits;

(3)     that the same claim or cause of action was involved in both suits; and

(4)     that the underlying judgment was final and on the merits.

620 S.W.3d [318,] 323 [(Tenn. 2021)].

There is no dispute that the Davidson County Chancery Court is a court of competent jurisdiction. Therefore, the underlying judgment that [the Department] relies upon was rendered by a court of competent jurisdiction. *Id.* As such, [the Department] has satisfactorily proven element (1) of the res judicata defense.

Moreover, it is clear that the doctrine of res judicata "bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." *Regions Bank* [*v. Prager*], 625 S.W.3d [842,] 847 [(Tenn. 2021)]. In *Heredia, et. al, v. Tenn. Dep't of Safety and Homeland Security*, Plaintiffs and [the Department] were both parties to the case. Therefore, [the Department] adequately proved element two (2) of the res judicata defense.

As to the third element of a res judicata defense, Tennessee follows the transactional approach in determining whether an earlier judgment on a case involves the same cause of action for the purpose of res judicata. *Bank of New York Mellon v. Chandra Berry*, No. W2017-01213-COA-R3-CV,

2018 WL 930967, at *2 (Tenn. Ct. App. Feb. 15, 2018). Under the transactional approach, the same cause of action is present where a "natural grouping or common nucleus of operative facts" is present. *Id.* [The Department] has adequately proven that Plaintiffs previously presented the same nucleus of operative facts: the seizure of the Vehicle and Cash by the City of Knoxville Police Department and Plaintiffs' claims for attorney's fees pursuant to T.C.A. § 4-5-325 and T.C.A. § 40-33-215. *See Heredia, et. al., v. Tenn. Dep't of Safety and Homeland Security*, Davidson County Chancery Court No. 15-1540-III; *see also Groves v. Tennessee Dep't of Safety & Homeland Sec.*, No. M2016-01448-COA-R3-CV, 2018 WL 6288170, at *4. Thus, a common nucleus of operative facts is present between this matter and the underlying matters, and accordingly element three (3) of the res judicata defense is satisfied.

Regarding the fourth element, Tenn. R. Civ. P. 41.02 provides that an order dismissing a case for failure to prosecute is a final order on the merits of the case for the purposes of res judicata. In the instant case, the Davidson County Chancery Court previously dismissed Plaintiffs' claims for failure to prosecute. *Heredia, et al., v. Tenn. Dep't of Safety and Homeland Security*, Davidson County Chancery Court No. 15-1540-III, October 3, 2018 Order. Accordingly, [the Department] adequately proved element four (4) of the res judicata defense: that the underlying judgment was final on the merits. Thus, [the Department] has sufficiently met the burden of proving the four elements of res judicata, and Plaintiffs' claims are barred from being presented in this Court.

In addition, the trial court determined that dismissal of Plaintiffs' claims was warranted based on their failure to prosecute the action pursuant to Tennessee Rule of Civil Procedure 41.02. The court thus granted the Department's motion to dismiss and pretermitted consideration of the Department's laches defense.

The City subsequently filed a motion to dismiss on July 27, 2023. The City relied on the doctrines of *res judicata* and collateral estoppel and further advanced the position that dismissal was warranted due to Plaintiffs' failure to prosecute the action. Plaintiffs thereafter filed a motion seeking additional findings and requesting that the trial court revise its order regarding application of the doctrine of *res judicata*. The Department opposed this motion, and Plaintiffs subsequently filed supplemental authority in support of their motion.

On June 25, 2024, the trial court entered an order denying Plaintiffs' motion for additional findings, denying Plaintiffs' motion to revise the court's order regarding

dismissal of the Department, and granting the City's motion to dismiss by reason of *res judicata*. Plaintiffs timely appealed.[5]

## II. Issues Presented

Plaintiffs present the following issues for our review, which we have restated slightly:

1. Whether this Court should suspend its rules pursuant to Tennessee Rule of Appellate Procedure 2 to consider the reserved issue of the defense of laches.

2. Whether the trial court erred by dismissing Plaintiffs' claims for attorney's fees pursuant to Tennessee Code Annotated § 40-33-215 based on *res judicata*.

3. Whether the trial court erred by dismissing Plaintiffs' claims for attorney's fees, pursuant to Tennessee Code Annotated § 40-33-215, based on failure to prosecute.

4. Whether the trial court erred by dismissing Plaintiffs' claims against the City based on *res judicata*.

5. Whether Plaintiffs are entitled to an award of attorney's fees on appeal pursuant to § 40-33-215(b)(1).

## III. Standard of Review

In their motions to dismiss filed pursuant to Tennessee Rule of Civil Procedure 12.02(6), the Department and the City respectively raised *res judicata* as a defense. *See, e.g.*, *Regions Bank v. Prager*, 625 S.W.3d 842, 848 (Tenn. 2021) (stating that the defense of *res judicata* may be raised in a motion to dismiss for failure to state a claim upon which relief can be granted). As our Supreme Court has previously explained concerning Rule 12.02(6) motions:

A Rule 12.02(6), Tenn. R. Civ. P., motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. In considering

---

[5] Although separate appeal numbers have been issued for each case, Mr. Heredia's and Mr. Groves's appeals were consolidated for the purposes of briefing and oral argument in this Court.

a motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). In considering this appeal from the trial court's grant of the defendant's motion to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d); *Owens v. Truckstops of America*, 915 S.W.2d 420, 424 (Tenn. 1996); *Cook*, *supra*.

*Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

The Department and the City also asked the trial court to dismiss Plaintiffs' claims for failure to prosecute, which this Court has clarified is a decision within the trial court's discretion:

Tennessee's trial courts possess broad discretionary authority to control their dockets and the proceedings in their courts. They have the express authority to dismiss cases for failure to prosecute or for failure to comply with the Tennessee Rules of Civil Procedure or the orders of the court. Tenn. R. Civ. P. 41.02(1). These rules permit trial courts, in their discretion, to dismiss complaints on their own motion for failure to prosecute, but this authority should be exercised sparingly and with great care. *Harris v. Baptist Mem'l Hosp.*, 574 S.W.2d 730, 731 (Tenn. 1978).

*Hessmer v. Hessmer*, 138 S.W.3d 901, 904 (Tenn. Ct. App. 2003) (other internal citations omitted).

## IV. *Res Judicata*

We begin our analysis by considering whether the trial court properly determined that the doctrine of *res judicata* barred Plaintiffs' claims for attorney's fees pursuant to Tennessee Code Annotated § 40-33-215 (West July 9, 2012, to current), which is a part of the statutory scheme dealing with forfeitures. This statutory section provides:

(a)     A person who has property seized in accordance with this part shall have a cause of action against the seizing agency if the seizing officer acted in bad faith in seizing or failing to return property seized pursuant to this part.

(b)     A person who prevails in an action against a seizing agency pursuant to this section shall be entitled to:

- 8 -

(1)     Reasonable attorney fees and court costs necessarily incurred in seeking the return of the seized property and in bringing the action pursuant to this section; and

(2)     Monetary damages resulting from the improper seizure of the property.

(c)     Monetary damages recoverable under this section shall be limited to the rental value of property similar to that which was seized for the period of time it was seized but in no event shall the damages exceed the value of the seized property.

(d)     For the purposes of this section, a seizing officer "acts in bad faith" when the officer acts intentionally, dishonestly, or willfully or the officer's actions have no reasonable basis in law or fact in regards to the seizure or failure to return the property seized.

*Res judicata*, also known as claim preclusion, is premised on the fundamental principle that "a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so." *Regions Bank*, 625 S.W.3d at 847 (quoting Restatement (Second) of Judgments, ch. 1, at 6 (Am. L. Inst. 1982)). "The doctrine of res judicata precludes a subsequent lawsuit 'between the same parties, or their privies, on the same claim with respect to all the issues which were, or could have been, litigated in the former lawsuit.'" *Armbrister v. Armbrister*, 414 S.W.3d 685, 698 n.15 (Tenn. 2013) (quoting *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012)). *Res judicata* promotes finality and "prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits." *Id.* "In light of its purposes, res judicata has been characterized as a 'rule of rest.'" *Regions Bank*, 625 S.W.3d at 847 (quoting *Jackson*, 387 SW.3d at 491).

When a party asserts the defense of *res judicata*, as the Department and the City have done here, that party bears the burden of demonstrating:

(1)     that the underlying judgment was rendered by a court of competent jurisdiction;

(2)     that the same parties or their privies were involved in both suits;

(3)     that the same claim or cause of action was asserted in both suits; and

(4)     that the underlying judgment was final and on the merits.

*Regions Bank*, 625 S.W.3d at 847-48 (citing *Elvis Presley Enters., Inc. v. City of Memphis*, 620 S.W.3d 318, 324 (Tenn. 2021)). The trial court herein determined that all requirements of *res judicata* had been met in this matter.

## A. *Res Judicata* and the Department

Our review of this issue is greatly complicated by the history of numerous lawsuits involving these parties. The record contains documentation regarding these actions, the first of which was filed in the Davidson County Chancery Court in August 2015. *See Heredia v. Gibbons*, No. M2016-02062-COA-R3-CV, 2019 WL 3216623 (Tenn. Ct. App. July 17, 2019) ("*Heredia I*"). In *Heredia I*, Plaintiffs and other individuals who had been involved in forfeiture proceedings filed a class action, quo warranto lawsuit against various defendants, including the Department, and alleged "misconduct by public officials in the administration of the [forfeiture] proceedings." *Id.* at *1. The *Heredia I* plaintiffs sought declaratory relief, judicial review, and other relief including, *inter alia*, an award of attorney's fees pursuant to Tennessee Code Annotated § 4-5-325—which is part of Tennessee's Uniform Administrative Procedures Act ("UAPA")—and § 40-33-215. *See id.*

Although the trial court herein did not rely on this Court's decision in *Heredia I* as establishing *res judicata*, the Department has relied on the *Heredia I* decision in its appellate brief when arguing that the trial court's *res judicata* finding should be affirmed. In doing so, the Department asserts that *Heredia I* "involved the same claim or cause of action" in that Mr. Groves and the other plaintiffs had sought attorney's fees pursuant to Tennessee Code Annotated § 40-33-215 in that action. The *Heredia I* pleadings provided by the parties in the appellate record demonstrate that a claim for attorney's fees pursuant to § 40-33-215 was raised during those proceedings and that the *Heredia I* trial court specifically dismissed the claim in its "Memorandum and Order Dismissing Case for Lack of Standing."

On appeal in *Heredia I*, this Court stated the following regarding the plaintiffs' claim for attorney's fees:

> While not available in a quo warranto action, Appellants submit that the plaintiffs who had or were participating in forfeiture proceedings have standing to recover attorney's fees under Tennessee Code Annotated § 4-5-325, which authorizes an award of attorney's fees in cases where a state agency issues a "citation." Tenn. Code Ann. § 4-5-325(a) (2015). To the extent the statute is even applicable in the context of a forfeiture proceeding, the remedy is only available in a contested case hearing or in an appeal of a final decision in a contested case. *See id.* § 4-5-325(a), (b) (authorizing "the hearing officer or administrative law judge" or the judge after judicial review

of "a final decision in a contested case hearing" to order the agency to pay the reasonable expenses incurred, including attorney's fees).

Appellants also argue that the plaintiffs who had participated in forfeiture proceedings and recovered their seized property had standing because they were denied complete relief in their forfeiture cases. Under Tennessee Code Annotated § 40-33-215, "[a] person who has property seized [has] . . . a cause of action against the seizing agency if the seizing officer acted in bad faith in seizing or failing to return property seized." *Id.* § 40-33-215(a) (2018). Appellants contend that these plaintiffs "only received partial relief (the return of their property)" in the forfeiture case because they were not permitted to pursue their cause of action for damages under Tennessee Code Annotated § 40-33-215. This argument fails, however, because <u>nothing in Tennessee Code Annotated § 40-33-215 requires the cause of action to be asserted in the forfeiture case</u>.

*Id.* at \*6 (emphasis added). This Court ultimately affirmed the trial court's dismissal of the *Heredia I* plaintiffs' claims predicated on lack of standing. *See id.*

Mr. Groves and the Department do not dispute that they were involved in *Heredia I* and that the decision in that action was rendered by a court of competent jurisdiction. As such, the first and second requirements of *res judicata* have been met. *See Regions Bank*, 625 S.W.3d at 847-48. Mr. Groves has disputed, however, whether the third and fourth elements were adequately proven.

The Department urges on appeal that this Court's ruling in *Heredia I* establishes compliance with both the third and fourth requirements for application of the doctrine of *res judicata* to bar Plaintiffs' claims in this matter. We disagree. Although *Heredia I* does demonstrate that Plaintiffs previously raised a claim pursuant to Tennessee Code Annotated § 40-33-215 against the Department, it does not establish that such claim was resolved "on the merits." *See Regions Bank*, 625 S.W.3d at 847-48. This Court has previously recognized that a dismissal for lack of standing does not constitute an adjudication on the merits. *See Stigall v. Lyle*, 119 S.W.3d 701, 704 (Tenn. Ct. App. 2003). Accordingly, the Department has failed to establish the fourth element of a *res judicata* defense with regard to *Heredia I*.

With respect to Mr. Groves, the Department also relies on this Court's prior decision in a separate lawsuit involving Mr. Groves and the Department as establishing the necessary elements of a *res judicata* defense: *Groves v. Tenn. Dep't of Safety & Homeland Sec.*, No. M2016-01448-COA-R3-CV, 2018 WL 6288170 (Tenn. Ct. App. Nov. 30, 2018) ("*Groves I*"). In that action, Mr. Groves and his daughter had filed a claim in the Davidson County Chancery Court in October 2015 against the Department, seeking judicial review of the administrative proceedings concerning the forfeiture of Mr. Groves's vehicle, as well

- 11 -

as declaratory relief. *See id.* The *Groves I* trial court dismissed the petition for judicial review as moot because Mr. Groves's vehicle had already been returned to him, and the court dismissed the declaratory judgment action for improper joinder of an original action with an administrative appeal. *See id.* On appeal, the *Groves I* Court affirmed the trial court's judgment and specifically agreed with the trial court's conclusion that it was improper for Mr. Groves to attempt to join an original claim in the trial court with a request for the trial court's appellate review of an administrative determination. *See id.* at *5-6.

Again, both Mr. Groves and the Department were involved in *Groves I*, so the second element of *res judicata* was met. *See Regions Bank*, 625 S.W.3d at 847-48. The Department argues that the third and fourth elements of a *res judicata* defense were established by *Groves I* because the *Groves I* Court reported, in its recitation of the case's procedural history, a finding by the ALJ that the Department had not acted in bad faith and should not be required to pay attorney's fees. *Id.* at *2. The Department urges on appeal that the ALJ's determination in *Groves I* that the Department had not acted in bad faith was final because Mr. Groves did not appeal the determination.

It is unclear from the pleadings in the instant record whether Mr. Groves had asserted a claim for attorney's fees pursuant to Tennessee Code Annotated § 40-33-215 in *Groves I*. The pleadings indicate that his claim was instead based on Tennessee Code Annotated § 4-5-325 of the UAPA. *See id.* at *4. The trial court's order makes no mention of a claim under Tennessee Code Annotated § 40-33-215. Moreover, on appeal, the *Groves I* Court stated that the ALJ had denied the claim for attorney's fees "under Tennessee Code Annotated § 4-5-325" and made no mention of § 40-33-215 in its opinion. *See id.*

Even assuming, *arguendo*, that the Department has shown that the third and fourth elements were satisfied, we determine that the first element, whether the underlying judgment was rendered by a court of competent jurisdiction, has not been satisfied. *See Regions Bank*, 625 S.W.3d at 847-48. As this Court has previously clarified regarding the proper procedure for contesting a forfeiture:

> If a claimant of the seized property wishes to contest the forfeiture, within thirty days of being notified by the applicable agency of the issuance of the forfeiture warrant, the property owner must file a written claim with the applicable agency. Tenn. Code Ann. § 40-33-206 (2012). The written claim must request a hearing and state the person's interest in the seized property, and the claimant must file any applicable bond. Tenn. Code Ann. §§ 40-33[-]206(a), (b)(1), and -208 (2012). The claimant's compliance with the required procedures then entitles him or her to a contested hearing before the agency under the Uniform Administrative Procedures Act. Tenn. Code Ann. § 40-33-209(d) (2012).

*Augustin v. Bradley Cnty. Sheriff's Off.*, 598 S.W.3d 220, 228 (Tenn. Ct. App. 2019) (quoting *State v. Sprunger*, 458 S.W.3d at 482, 497 (Tenn. 2015)). The recitation of the factual history in *Groves I* demonstrates that Mr. Groves had made a formal request for a hearing in the administrative proceedings on February 4, 2015, and a contested case hearing was ultimately scheduled for August 4, 2015. *See* 2018 WL 6288170, at *2. However, before the agency conducted the hearing, Mr. Groves filed a motion seeking class certification and a motion to dismiss the forfeiture warrant. *Id.* The ALJ continued the hearing to consider and rule on the pending motion to dismiss. *Id.* On September 28, 2015, the ALJ entered an order denying class certification and granting the motion to dismiss the forfeiture warrant. *Id.* Finding that the Department had not strictly complied with the forfeiture statute, the ALJ ordered the immediate return of the seized vehicle. *Id.* In that same order, the ALJ also denied Mr. Groves's request for attorney's fees, determining that "the Department did not act in bad faith." *Id.* The Department relies upon this finding by the ALJ in support of its defense of *res judicata*.

As the Department concedes in its appellate brief, "[s]o long as the 'administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' Tennessee courts give the agency's determination the same preclusive effect as they would if the agency had been a court of law." *See Morris v. Esmark Apparel, Inc.*, 832 S.W.2d 563, 566 (Tenn. Ct. App. 1991) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). To make this determination, this Court must consider whether "the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *See Morris*, 832 S.W.2d at 566. Here, it is undisputed that the ALJ never conducted a full contested case hearing in *Groves I*. *See* 2018 WL 6288170, at *2. Accordingly, Mr. Groves was never afforded a "full and fair opportunity to litigate" the issue of whether the Department acted in bad faith by delaying the return of his property. As such, the ALJ's decision cannot be given preclusive effect concerning this issue. The *Groves I* decision also fails to support the Department's *res judicata* defense.

The record demonstrates that Plaintiffs filed another lawsuit against the Department in the Davidson County Chancery Court in December 2015, bearing docket number 15-1540, wherein Plaintiffs sought judicial review of the underlying forfeiture proceedings ("*Heredia II*"). The pleadings in the instant record also demonstrate that Plaintiffs stated a claim for attorney's fees pursuant to Tennessee Code Annotated § 40-33-215 in *Heredia II*. The chancery court ultimately dismissed Plaintiffs' claims without prejudice for failure to prosecute on October 3, 2018. A few days later, Plaintiffs and the Department filed an agreed order seeking to stay the case to await the outcome of other pending litigation and appeals between the parties. However, on October 11, 2018, the chancery court entered an order stating that it was "declin[ing] to enter the submitted Agreed Order because it [was] not properly before the Court." The chancery court further stated that if the parties wished to reopen the case, they would need to file a motion pursuant to Tennessee Rule of Civil Procedure 60. The record in this case demonstrates that Plaintiffs did file a Rule 60 motion

in *Heredia II* although the parties acknowledge in their appellate briefs that the chancery court never ruled upon the motion.[6]

The trial court relied on the dismissal in *Heredia II* when determining that the fourth *res judicata* requirement had been met, concluding that the underlying judgment of dismissal for failure to prosecute was final and on the merits. We disagree. The chancery court's October 3, 2018 order of dismissal for failure to prosecute specified that it was without prejudice. As such, it does not operate as an adjudication on the merits and fails to satisfy the fourth element of a *res judicata* defense. *See Regions Bank*, 625 S.W.3d at 852 (involuntary dismissal of an earlier lawsuit for failure to prosecute did not operate as an adjudication on the merits because the record reflected the trial court's clarification that the dismissal was without prejudice); *State ex rel. Bissonette v. Marland*, No. E2000-02089-COA-R3-CV, 2001 WL 422960, at *2 (Tenn. Ct. App. Apr. 26, 2001) ("While a dismissal for failure to prosecute may operate as an adjudication on the merits, such is not the case herein, where the court's Order dismissed the action specifically providing that the dismissal was without prejudice."). Accordingly, the Department has failed to establish the fourth element of a *res judicata* defense based upon *Heredia II*.

Finally, as the Department points out in its brief, Mr. Groves filed yet another action seeking judicial review of the forfeiture proceedings in the Davidson County Chancery Court, bearing docket number 16-0619 ("*Groves II*"), wherein Mr. Groves repeated the claims asserted in *Heredia II*. These claims included a claim for attorney's fees pursuant to Tennessee Code Annotated § 40-33-215. The chancery court in *Groves II* ultimately entered an order dismissing the case on August 17, 2020. In doing so, the chancery court addressed Mr. Groves's claims for attorney's fees made pursuant to Tennessee Code Annotated § 4-5-325 as well as the "Tennessee Supreme Court's ruling in *Bloomingdale's by Mail v. Huddleston*, 848 S.W.2d 52 (Tenn. 1992)." The chancery court found that these claims were barred by *res judicata*, stating:

> Mr. Groves has had his day in court. Indeed, he has had many of them. The requested attorney's fees related to the initial 2015 forfeiture action have been denied directly or effectively by the ALJ, the Commissioner, Part IV, the Court of Appeals, the Supreme Court, and now this Court. Despite its muddy, overlapping history spanning more than five years, this issue has received a final judgment on the merits and this Court is not at liberty to revisit it. Accordingly, the Petition for Judicial Review is DISMISSED.

In the same order, the chancery court noted:

---

[6] As the Department points out, a motion filed pursuant to Tennessee Rule of Civil Procedure 60 "does not affect the finality of a judgment or suspend its operation." *Nesmith v. Clemmons*, No. M2021-01030-COA-R3-CV, 2023 WL 194827, at *11 (Tenn. Ct. App. Jan. 17, 2023) (quoting Tenn. R. Civ. P. 60.02).

Prior to oral argument, Mr. Groves also contended that he should recover his costs and fees pursuant to the Tennessee Court of Appeals' ruling in *In re Heredia*, wherein the court identified Tenn. Code Ann. § 40-33-215 as the exclusive statute for an award of attorney's fees in forfeiture cases. While Mr. Groves disagreed that this statute is the only pathway to a remedy, he relied on it as an independent ground for his claim until withdrawing this argument at oral argument. Thus, the Court will only address Mr. Groves' first two arguments herein.

Accordingly, the chancery court in *Groves II* never ruled on Mr. Groves's claim pursuant to § 40-33-215, determining that Mr. Groves had effectively voluntarily dismissed it.

The voluntary dismissal of Mr. Groves's claim pursuant to § 40-33-215 does not constitute a final judgment on the merits for *res judicata* purposes. *See Garrett v. Corry Foam Prods., Inc.*, 596 S.W.2d 808, 810 (Tenn. 1980) (holding that a voluntary dismissal does not constitute a judgment on the merits and does not support the defense of *res judicata*); *Merchants & Mfrs. Transfer Co. v. Johnson*, 403 S.W.2d 106, 108 (Tenn. Ct. App. 1966) (explaining that a voluntary dismissal was not a "final adjudication on the merits or of the rights of plaintiff and defendants in the present case so as to constitute res judicata."). Therefore, the Department has failed to establish the fourth element of a *res judicata* defense based upon *Groves II*.

Because none of the prior lawsuits involving Mr. Groves and the Department meet all of the requirements of a *res judicata* defense, we determine that the trial court erred in granting the Department's motion to dismiss on that basis. We accordingly vacate the portion of the trial court's ruling regarding *res judicata*.

### B. *Res Judicata* and the City

In its July 2025 order granting the City's motion to dismiss, the trial court stated:

Finally, with respect to Defendant City of Knoxville's Motion to Dismiss, the Defendant reaffirms that the Plaintiffs have already received multiple final judgements on the merits in cases against the Defendants specifically involving the subject matter of these cases. Accordingly, the City of Knoxville contends that the Order granting [the Department's] Third Motion to Dismiss on the basis of res judicata applies equally to them. As set forth in this court's earlier order granting [the Department's] Motion to Dismiss pursuant to Tenn. R. Civ. P. 12.02(6), this court has concluded that res judicata is applicable and accordingly grants the City of Knoxville's Motion to Dismiss. Further, the court incorporates its earlier order of April

24, 2023, as if fully set forth herein in further support and explanation of its ruling granting the City of Knoxville's Motion to Dismiss.

Having concluded that the defense of *res judicata* was not adequately proven, we determine that the trial court erred in granting the City's motion to dismiss on that basis. To the extent that the trial court's ruling can be construed as also relying on Plaintiffs' alleged failure to prosecute when dismissing Plaintiff's claims against the City, that issue will be addressed in the next section of this Opinion.

## V. Failure to Prosecute

In addition to its *res judicata* determination, the trial court also concluded that Plaintiffs had failed to prosecute the action, warranting its dismissal. Regarding this failure, the trial court stated in pertinent part:

> The instant case was initiated in this Court in November 2015. Thereafter, Plaintiffs have had multiple bites at the same apple: whether they are entitled to attorney's fees under either, T.C.A. § 4-5-325 or T.C.A. § 40-33-215. *See, e.g.*, *Heredia v. Gibbons*, Davidson County Chancery Court 15-0976-III; *Heredia, et. al. v. Tenn. Dep't of Safety and Homeland Security*, Davidson County Chancery Court No. 15-1540-III; *Gordon Groves v. Tenn. Dep't of Safety and Homeland Security*, Davidson County Chancery Court No. 16-619-II. Plaintiffs have succeeded in none of the aforementioned actions, and the courts dismissed all of the actions on grounds of res judicata or failure to prosecute. *Id.* Furthermore, our Court of Appeals affirmed the lower court's dismissal of Plaintiffs' claims pursuant to the doctrine of res judicata. *Groves v. Tennessee Dep't of Safety & Homeland Sec.*, No. M2016-01448-COA-R3-CV, 2018 WL 6288170, at *4 (Tenn. Ct. App. Nov. 30, 2018). After nearly eight years litigating the current issue in this Court, including a more than two-year period of inactivity from February 2016 to October 2018, allowing the case to proceed would unduly prejudice Defendant [the Department]. Therefore, irrespective of the Court's foregoing analysis regarding [the Department's] res judicata defense, the Court orders dismissal of Plaintiffs' instant action for failure to prosecute pursuant to Tenn. R. Civ. P. 41.02.

We reiterate that a trial court's decision concerning whether to dismiss an action for failure to prosecute is discretionary and is therefore reviewed to determine whether the trial court abused its discretion. *See Hessmer*, 138 S.W.3d at 904. As our Supreme Court has explained regarding this standard:

> Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp.*

*Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22,] 42 [(Tenn. 2005)].

> To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010). Although the abuse of discretion standard does not permit this Court to substitute its decision for that of the trial court, it also does not "immunize a lower court's decision from any meaningful appellate scrutiny." *Id.* at 524.

Our review of the trial court's order dismissing Plaintiffs' claims based on their purported failure to prosecute reveals four stated bases for the court's ruling: (1) other lawsuits filed between the parties and Plaintiffs' lack of success therein, (2) eight years of litigation in this matter, (3) two years of inactivity between February 2016 and October 2018, and (4) prejudice to the Department. Examining closely each of these asserted reasons and its factual and legal foundation, we conclude that the trial court reached an unreasonable decision that was based on a clearly erroneous assessment of the evidence. *See id.*

- 17 -

The trial court's first reason—other lawsuits involving these parties and Plaintiffs' lack of success therein—was more appropriately examined relative to the asserted *res judicata* defense and has no bearing on Plaintiffs' alleged failure to prosecute this action. In fact, the history of other litigation involving Plaintiffs and the Department supports allowing this matter to proceed. As Plaintiffs point out in their brief, the trial court recognized in its March 24, 2020 order adjudicating the Department's earlier motion to dismiss that the parties had been "litigating the forfeiture proceedings and judicial review of those proceedings in other venues" and had "agreed not to move [this matter] forward during the pendency of the forfeiture litigation." Indeed, as our foregoing examination of the other lawsuits demonstrates, decisions in those cases were being rendered in 2018, 2019, and 2020. We therefore conclude that the history of litigation in other courts involving these parties weighs <u>against</u> dismissal of the case at bar for failure to prosecute.

The trial court's second stated reason—that this matter had been pending for eight years—also does not support dismissal. As the trial court found in its March 24, 2020 order, the parties were litigating in other forums for much of that time and had agreed "not to move [this matter] forward" until those cases were resolved. Moreover, during March 2020 and for several months thereafter, the Tennessee Supreme Court had limited court proceedings and extended filing deadlines due to the COVID-19 pandemic. *See In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Mar. 13, 2020, through June 8, 2023) (Orders). Despite this fact, the parties continued to file pleadings in this matter, including a motion for summary judgment filed by Plaintiffs in April 2020, subsequent responses by the defendants, and a motion to continue filed by the Department to allow time for discovery. In 2021, the parties litigated discovery issues. In January 2022, Plaintiffs filed a motion in the trial court seeking to amend their complaint, which the trial court granted by order dated September 1, 2022. The Department's motion to dismiss for failure to prosecute was filed roughly twenty days later. Considering the above-stated circumstances, we conclude that the length of time this litigation had been pending prior to dismissal was not unreasonable and that activity in this matter was ongoing from the court's March 2020 order forward.

The trial court's third stated reason—two years of inactivity between February 2016 and October 2018—is likewise insufficient as a basis for dismissal. We reiterate that these parties were litigating in other forums during that timeframe, as the trial court found in its March 24, 2020 order, and had agreed "not to move [this matter] forward" until those cases were resolved. The current trial court judge was not presiding over the case during that timeframe and would therefore have been less familiar with the proceedings between February 2016 and October 2018 than the former trial court judge, who had issued the March 2020 order denying dismissal for failure to prosecute. We therefore determine this to be an erroneous assessment of the history of this matter.

Finally, with respect to the trial court's final reason justifying dismissal, that the Department would be prejudiced if the case were allowed to proceed, the court provided

- 18 -

no factual explanation for this basis. *See Dennis Joslin Co., LLC v. Johnson*, 138 S.W.3d 197, 201 (Tenn. Ct. App. 2003) (finding that prejudice was proven when the complaining party demonstrated that witnesses were no longer available due to their deaths and that the party had experienced "unnecessary and preventable increased financial obligations occasioned by the delay"). Here, the court made no factual findings to support its determination of prejudice to the Department, and our review of the record fails to disclose that such prejudice existed. We therefore determine that the trial court's fourth reason is unsupported by the evidence.

The Department relies on other cases involving involuntary dismissals wherein it claims the delays or periods of inactivity were shorter than in this matter. However, upon review, we find these cases to be distinguishable. For example, in *Hessmer*, 138 S.W.3d at 905, the trial court dismissed the plaintiff's complaint because he failed to have a summons served on the defendant or otherwise pursue the matter for seven months after filing his complaint. Similarly, in *Hodges v. Attorney General*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000), the plaintiff filed a complaint but failed to file completed summons forms and to have summonses issued and served for eleven months before dismissal. Likewise, in *Geico Gen. Ins. Co. v. G & S Transp., Inc.*, No. M2016-00430-COA-R3-CV, 2016 WL 6087660, at *3 (Tenn. Ct. App. Oct. 17, 2016), the complaint was filed in January 2013 and dismissed three years later. The only action taken by the plaintiff during that time was a substitution of counsel, and the plaintiff failed to respond to the motion to dismiss or appear at the hearing on the motion. *See id.* Finally, in *Barrera v. Bob Parks Realty, LLC*, No. M2020-01027-COA-R3-CV, 2021 WL 1942382, at *7 (Tenn. Ct. App. May 14, 2021), the trial court dismissed the plaintiffs' claims because the plaintiffs "consistently failed to comply with [the c]ourt's orders and . . . unnecessarily delayed the litigation," citing thirteen examples of the plaintiffs' failures to respond to pleadings, discovery requests, and to appear for hearings. Respectfully, we do not find these cases persuasive regarding the circumstances presented herein.

Based on the foregoing, we conclude that the trial court erred by dismissing Plaintiffs' claims for failure to prosecute. We therefore vacate the trial court's order of dismissal against both the City and the Department.

## VI. Laches

Predicated on its determination that dismissal of Plaintiffs' claims was warranted by failure to prosecute and *res judicata*, the trial court pretermitted any consideration or analysis of whether laches would preclude recovery on behalf of Plaintiffs. On appeal, Plaintiffs have urged this Court to rule on the issue of laches in the first instance. However, we decline to do so. This Court is an appellate court, and we are thus "limited in authority to the adjudication of issues that are presented and decided in the trial courts[.]" *In re Estate of Boykin*, 295 S.W.3d 632, 636 (Tenn. Ct. App. 2008) (quoting *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976)).

## VII. Attorney's Fees on Appeal

Finally, Plaintiffs have requested that this Court award them attorney's fees on appeal pursuant to Tennessee Code Annotated § 40-33-215(b)(1), which provides that a "person who prevails in an action against a seizing agency pursuant to this section shall be entitled to . . . [r]easonable attorney fees and court costs necessarily incurred in seeking the return of the seized property and in bringing the action pursuant to this section" (emphasis added). The condition precedent to this provision, however, is found in § 40-33-215(a), which provides that a party who has had property seized "shall have a cause of action against the seizing agency if the seizing officer acted in bad faith in seizing or failing to return property seized pursuant to this part" (emphasis added). Because the issue of bad faith pursuant to § 40-33-215 remains to be adjudicated, Plaintiffs cannot yet be considered prevailing parties pursuant to this statutory section.

## VIII. Conclusion

For the foregoing reasons, we vacate the trial court's order dismissing Plaintiffs' claims against the Department and the City. We remand this matter to the trial court for further proceedings consistent with this Opinion. We deny Plaintiffs' request for attorney's fees pursuant to Tennessee Code Annotated § 40-33-215(b)(1). Costs on appeal are assessed one-half to the City of Knoxville and one-half to the Tennessee Department of Safety and Homeland Security.

s/ Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE

- 20 -